IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YONI NOAH GORFINKEL, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | No. 3:20-cv-01086-X (BT) | |
| § | | |
| UNITED STATES CITIZENSHIP § | | |
| AND IMMIGRATION SERVICE, et al., § | | |
|     Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is *pro se* Plaintiff Yoni Noah Gorfinkel's "Motion to Ammend [sic] Plaintiff's First Amended Complaint" (ECF No. 26) and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 24). For the reasons stated, the undersigned DENIES Gorfinkel's motion for leave to file a second amended complaint and recommends the Court GRANT Defendants' motion to dismiss.

**Factual Background and Procedural History**

Gorfinkel, a resident of Dallas County, Texas, is a citizen of Israel and a conditional permanent resident of the United States. Am. Compl. ¶¶ 3, 5 (ECF No. 21). He entered the United States on January 21, 2017, and his I-751 remains pending. *Id.* ¶¶ 5, 6. Gorfinkel alleges that, in May 2019, he lost his physical green card and thus had no proof that he is a lawful resident of the United States. *Id.* ¶ 7. Gorfinkel obtained an I-551 stamp on his passport as temporary proof of his status, but the stamp expired on May 2, 2020. *Id.* ¶ 7. Gorfinkel claims that beginning on

1

February 7, 2020, he contacted the United States Citizenship and Immigration Service (USCIS) on two occasions to schedule an appointment to get a new, temporary I-551 stamp. *Id.* ¶¶ 10-11. But he was unable to schedule the appointment because USCIS offices were generally closed to the public in early March 2020 due to the COVID-19 pandemic. *Id.* ¶¶ 8, 11. At that time, USCIS only offered emergency, in-person appointments. *Id.* ¶ 8.

On April 29, 2020, Gorfinkel brought this *pro se* civil action under 28 U.S.C. § 1361 and 8 U.S.C. § 1304(d) seeking a writ of mandamus against USCIS and Kenneth T. Cuccinelli, Larry C. DeNayer, Daniel Renaud, Chad F. Wolf,[1] Tony R. Bryson, and William Bierman to compel them to provide him with evidence of his lawful permanent resident status in the United States. Compl. (ECF No. 3). On May 11, 2020, Gorfinkel filed a motion for a temporary restraining order (TRO) to enjoin Defendants from arresting or prosecuting him under 8 U.S.C. § 1304(e). Mot. 1 (ECF No. 7). He also moved for Defendants to show cause why such an injunction should not be issued and why the documentation he sought could not be issued. *Id.* Finally, Gorfinkel moved for a preliminary injunction ordering USCIS to issue temporary proof of permanent resident status under 8 U.S.C. § 1304(d) and the relevant regulations. *Id.*

---

[1] Wolf, the then-acting Secretary of the Department of Homeland Security, was named as a defendant in Gorfinkel's complaint. Compl. 1, 6 (ECF No. 3). However, he was terminated from this lawsuit on June 3, 2020 because the amended complaint failed to name him as a defendant. *See* Am. Compl. ¶ 4 n.1.

On May 14, 2020, Gorfinkel had an in-person appointment with USCIS. Am. Compl. ¶ 1. At that appointment, he received a temporary I-551 stamp in his passport, which demonstrates that he is a lawful permanent resident of the United States. *Id.* The same day, Gorfinkel moved to amend his complaint. Mot. (ECF No. 12). However, the Court found that he was entitled to amend his complaint without leave of court, and denied his motion to amend as unnecessary. Ord. (ECF No. 13).

Defendants and Gorfinkel then acknowledged that the relief Gorfinkel originally sought in his motion for a TRO had been provided, and on May 21, 2020, the Court denied Gorfinkel's TRO motion as moot. Ord. (ECF No. 18). Gorfinkel also admitted that he generally agreed to the dismissal of this case, but he wanted the "United States" to pay him $518.70 in costs he allegedly incurred in filing and serving this case. Am. Compl. ¶ 1.

On May 22, 2020, Defendants filed a motion to dismiss. Mot. (ECF No. 19). But Gorfinkel filed an amended complaint (ECF No. 21) on June 3, 2020, which rendered Defendants' motion to dismiss moot. Notice (ECF No. 22). The next day, June 4, 2020, Gorfinkel withdrew the remaining portions of his motion for a temporary restraining order. (ECF No. 23.) Also on June 4, 2020, USCIS offices began reopening to provide the public with non-emergency, face-to-face services.[2] https://www.uscis.gov/about-us/uscis-office-closings (last visited Feb. 11, 2021).

---

[2] Gorfinkel claims that although Defendants contend that on June 4, 2020, USCIS offices began reopening to provide non-emergency, face-to-face services to the public, the USCIS field offices are not open or providing non-emergency, face-to-face services as it relates to "ADIT stamps." (ECF No. 29 at 1.) Further, Gorfinkel

3

In his first amended complaint, which is the live pleading, Gorfinkel repeats his request for proof of status and adds two new allegations: (1) there is a possibility his situation may be repeated if USCIS offices close in the future; and (2) he "suffered fear and anxiety" when he did not have proof of his lawful permanent resident status for eleven days, which entitles him to $1.00 in compensatory damages and $518.70 in court costs.[3] Am. Compl. ¶¶ 22-31; *see also* Compl. 8.

On June 16, 2020, Defendants filed a second motion to dismiss, arguing: (1) Gorfinkel's claims are moot; (2) he has no Article III standing; (3) he is not entitled to mandamus relief; (4) his claim for monetary damages is barred by sovereign immunity; and (5) he has failed to state any claim under *Bivens*. Mot. (ECF No. 24). Gorfinkel filed a response in opposition (ECF No. 25), and Defendants filed a reply (ECF No. 27). On July 1, 2020, Gorfinkel filed a motion to amend his first amended complaint (ECF No. 26). Defendants responded in opposition (ECF No. 28), and Gorfinkel filed a reply (ECF No. 30). On July 27, 2020, Gorfinkel filed a "Notice" to inform the Court that USCIS field offices are not open or providing non-emergency, face-to-face services regarding "ADIT stamps." (ECF No. 29 at 1.) He claims that this fact is material to this case because it undercuts Defendants'

---

asserts that the Contact Center continues to require an emergency before scheduling an appointment, just as it did prior to June 4, 2020. *Id.*

[3] The second claim Gorfinkel added is the claim he also attempted to raise in his motion seeking a temporary restraining order. Mot. (ECF No. 8 ¶¶ 15-17) ("Plaintiff will suffer irreparable harm."). This Court denied the request for a TRO (ECF No. 18), and Gorfinkel withdrew the remaining issues set forth in his motion (ECF No. 23).

contention that their conduct will not be repeated. Thereafter, Defendants filed a response (ECF No. 31), and Gorfinkel filed a reply (ECF No. 32).[4] Defendants' motion to dismiss and Gorfinkel's motion for leave to file a second amended complaint are ripe for determination.

## Motion to Amend

District courts are "entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). An amendment is futile if it could not survive a Rule 12(b)(6) motion. *Id.* Even so, "[g]enerally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d

---

[4] Gorfinkel's "Notice" constitutes a surreply. Neither the local rules of this court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right. N.D. Tex. Loc. Civ. R. 7.1(e)-(f); *Mason v. AT&T Servs., Inc.*, 2019 WL 7667212, at *1 (N.D. Tex. Aug. 26, 2019). Indeed, surreplies are "highly disfavored" and permitted only in "extraordinary circumstances," such as when necessary to respond to new issues, theories, or arguments raised for the first time in a reply brief. *Mason,* 2019 WL 7667212, at *1.; *see also Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 WL 251318, at *18 (N.D. Tex. Feb. 3, 2003) ("A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage."). Because the government responded to the surreply, and Gorfinkel replied to that response, the Court will not strike the superfluous filings.

1053, 1054 (5th Cir. 1998) (per curiam) (citing *Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982)).

But leave to amend pleadings is by no means automatic. *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979)). The decision to grant or deny leave to amend lies within the sound discretion of the trial court. *Id.* (citing *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir. 1986); *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)). Although leave to amend must be freely given, "that generous standard is tempered by the necessary power of a district court to manage a case." *Id.* (quoting *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987)).

Gorfinkel moves under Federal Rule of Civil Procedure 15(a)(2) to file a second amended complaint to correct defects in his first amended complaint that Defendants identified in their motion to dismiss. Mot. 1 (ECF No. 26). Gorfinkel claims that the issue he intends to correct relates to his *Bivens* claim. *Id.* He argues that he should be granted leave to amend because his second amended complaint identifies the conduct necessary to state a claim under *Bivens*. *Id.* Gorfinkel further argues that his second amended complaint also names a new defendant, a USCIS employee in his personal capacity. *Id.*

As noted, Gorfinkel has already amended his complaint. *See* Am. Compl. (ECF No 21). The legal issues he now seeks to remedy with the filing of his second

amended complaint cannot be remedied. As discussed below, Gorfinkel's claims are moot, he has no Article III standing, he is not entitled to mandamus relief, his claim for monetary damages is barred by sovereign immunity, and he has failed to state any claim under *Bivens*. By his second amended complaint, Gorfinkel attempts to add an allegation regarding the possibility of future USCIS field office closures if USCIS is required to furlough employees due to budget constraints, and add Robert Law, the Chief of the Office of Policy and Strategy at USCIS, as a defendant in his official and personal capacities. (ECF No. 26-1, ¶¶ 5.g., 18, 26, 33-34.) But these additions, even if permitted, do not remedy the fundamental legal deficiencies pointed out in Defendants' motion to dismiss. In sum, Gorfinkel's second amended complaint would not withstand a Rule 12(b)(6) motion, and the amendment he seeks is futile.

Under the Federal Rules of Civil Procedure, Gorfinkel was permitted to amend his complaint once, as a matter of course, without seeking leave of court. *See* Fed. R. Civ. P. 15(a)(1)(B). And Gorfinkel availed himself of that right when he filed his first amended complaint—after he received the relief he sought in his original complaint—because he now wants the government to pay his court costs. Indeed, Gorfinkel admits that his motivation in continuing to pursue this litigation is to recover his court costs, stating: "I would have stipulated to the Moon being made of Swiss cheese if the defendants agreed to hand over the money I had asked for." Resp. 8 (ECF No. 25) (footnote omitted). The liberal policy for allowing amendment does not apply under these circumstances, and the Court exercises its

7

discretion to prevent Gorfinkel from moving the goalposts to extort some monetary settlement from the government. Gorfinkel's request for leave to amend is DENIED.

## Motion to Dismiss

Defendants bring their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### Legal Standards

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks and citation omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). The party asserting jurisdiction must allege the jurisdictional basis "affirmatively and distinctly"; it cannot be "established argumentatively or by mere inference." *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citations omitted). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

When deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). A plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

Analysis

*Mootness*

Article III of the United States Constitution limits federal jurisdiction to actual "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2; *see also Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). When a court lacks the constitutional power to adjudicate a case, the case must be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "[C]ourts may not decide cases that since have become moot because there is no longer a live case or controversy." *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019). The requirement that there be a case-or-controversy "subsists through all stages of federal judicial proceedings, trial and appellate. [I]t is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal citation and quotation marks omitted). A case becomes moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). With mootness, a plaintiff must demonstrate that he has a personal stake in the outcome of the litigation, and it continues through "all stages of review, not merely at the time the complaint is filed. A case that becomes moot at any point during the proceedings is . . . outside the jurisdiction of the federal courts." *United States v.*

*Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 12(h)(3) (noting that where the court lacks subject-matter jurisdiction, the action must be dismissed). Where the issue of mootness arises, the court must resolve it before it can assume jurisdiction over the case. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

With the filing of this lawsuit, Gorfinkel sought to obtain proof of his lawful permanent resident status in the United States. Compl. 8; Am. Compl. ¶ 1. Both parties now agree that USCIS has provided Gorfinkel with proof of his lawful permanent residency. Am. Compl. ¶ 1 (noting that Gorfinkel agreed the relief he sought had been received). *See Knox*, 567 U.S. at 307 (finding that a case has been rendered moot where "it is impossible for a court to grant any effectual relief whatever to the prevailing party"). The relief Gorfinkel sought has been provided, and his claims have therefore been rendered moot. *See Ghosheh v. Tarango*, 2016 WL 3763421, at *1 (N.D. Tex. July 14, 2016) (finding the petition for writ of mandamus to be moot where the petitioners sought to compel USCIS to issue a decision on their immigration applications and USCIS issued those decisions after the lawsuit was filed). Gorfinkel's claims became moot when he received his proof of status; therefore, the Court lacks subject-matter jurisdiction and should dismiss this action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

*Article III standing*

"Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The United States Supreme Court has interpreted "cases" and "controversies" to refer to those types of disputes traditionally resolved by the judicial process. *Muskrat v. United States*, 219 U.S. 346, 357 (1911). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co.*, 523 U.S. at 102 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The "irreducible constitutional minimum of standing" includes three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be " 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)) (brackets in original). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Even if Gorfinkel's claims were not rendered moot, he lacks Article III standing because he does not allege a cognizable injury. Gorfinkel's alleged harm,

that he may be unable to get proof of his lawful permanent resident status if USCIS offices close again, is speculative at best. Gorfinkel has an I-551 stamp that provides proof of his legal status until May 14, 2021. *See* https://www.uscisguide.com/?s=i-551+stamp+valid.com (last visited Feb. 4, 2021) (recognizing that the I-551 stamp demonstrates permanent residence status in the United States and is valid for up to one year). Yet, he invites the Court to imagine a "second wave" of COVID-19, at some later date, would result in the closure of USCIS offices and prevent him from renewing his I-551 stamp. His argument further assumes that even if USCIS offices close, there will be no procedures in place to provide him proof of his legal status. Gorfinkel's claim that he will suffer a future injury is speculative, and he is not entitled to relief based on a hypothetical injury he may never suffer. Accordingly, the Court should dismiss his claims for lack of standing.

*Mandamus Relief*

The court's "power to review agency decisions and to issue mandamus relief 'is limited to extraordinary circumstances where the plaintiff can demonstrate [1] it has a clear right to relief, [2] the defendant a clear duty to act, and [3] that no adequate alternative remedy exists.'" *Mendoza-Tarango v. Flores*, 982 F.3d 395 (5th Cir. 2020) (quoting *Randall D. Wolcott, M.D., P.A, v. Sebelius*, 635 F.3d 757, 774 (5th Cir. 2011)); *accord Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). "These hurdles, however demanding, are not insurmountable." *In re 2920 ER, L.L.C.*, 607 F. App'x 349, 352 (5th Cir. 2015) (quoting *In re Volkswagen of*

13

*Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). Even if the three elements are met, the decision whether to issue the writ remains in the court's discretion due to "the extraordinary nature of the remedy." *Wolcott*, 635 F.3d at 768; *see also Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (noting that mandamus relief is a "drastic" remedy reserved for "extraordinary situations").

Gorfinkel has failed to demonstrate all three of the perquisites to the issuance of mandamus relief. For instance, he has not shown that Defendants had a clear duty to act and failed to do so. This is so because Gorfinkel was not denied proof of his lawful permanent resident status. Rather, in 2020, USCIS was simply unable to immediately provide the proof to him because USCIS offices were closed due to the COVID-19 pandemic. Moreover, Gorfinkel fails to show that there are no adequate alternative remedies available to him should the hypothetical harm he anticipates occur. When the USCIS offices were closed in 2020, there were other options available for individuals who needed their services, and if such an issue occurs again, there is no reason to believe that other options will not be made available. Gorfinkel received the proof of lawful permanent resident status he was seeking, and he has therefore failed to show that his case presents extraordinary circumstances warranting the issuance of a writ.

*Sovereign Immunity*

Gorfinkel alleges that he is entitled to $1.00 in monetary damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), on the basis that "the Government acted *ultra vires* and beyond their discretion" by depriving

him of his "liberty interest." Am. Compl. ¶¶ 30, 32. Under the doctrine of sovereign immunity, a plaintiff cannot sue the United States without its permission. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). A lawsuit against a government official in an official capacity is the equivalent of a lawsuit against the government itself. *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010) (per curiam). Absent a waiver of this immunity, or consent to be sued, any suit brought against the United States or any federal agency must be dismissed for lack of subject-matter jurisdiction. *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994); *see also Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007) ("The absence of such a waiver is a jurisdictional defect.") (quoting *Lewis v. Hunt*, 492 F.3d 565, 571 (5th Cir. 2007)). The plaintiff bears the burden of showing a waiver of sovereign immunity. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (quoting *St. Tammany Par. v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)).

Gorfinkel has not identified consent or any waiver of sovereign immunity that would allow him to sue any government officials in their official capacity on a *Bivens* claim. *See Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (finding sovereign immunity barred the plaintiff's claims against the United States, the Bureau of Prisons, or the Bureau of Prisons's officers in their official capacities). Gorfinkel has, thus, failed to identify consent or any waiver of sovereign immunity that would permit his suit to go forward against the United States or any federal agency, so his claims against USCIS and its employees, federal

15

officials, must be dismissed without prejudice for lack of subject-matter jurisdiction.

### *Failure to State a Claim*

Finally, Gorfinkel has failed to state a claim under *Bivens*. A claim under *Bivens* is an implied cause of action that is referred to as the "federal analog to suits brought against state officials under" 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 675-76. *Bivens* claims are brought against federal actors. *See Carlson v. Green*, 446 U.S. 14, 18 (1980). A *Bivens* action must be based on the personal involvement of the named defendants. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter the officer"); *see also Guerrero-Aguilar v. Ruano*, 118 F. Appx 832, 833 (5th Cir. 2004) (per curiam) (noting that *Bivens* requires a showing of personal involvement). Claims against federal employees in their official capacities based on an alleged constitutional violation are barred under *Bivens* because they are the equivalent to claims against the federal agencies who employ them. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). A *Bivens* claim cannot be sustained against a federal agency. *Meyer*, 510 U.S. at 484-86; *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995).

Gorfinkel has named each individual defendant "in his official capacity." Am. Compl. ¶¶ 4b-f. He has failed to state a claim under *Bivens*, which is limited to suits against individuals (i.e., in their individual capacities). *See Kentucky*, 473 U.S. at 165-67 (noting that official capacity claims against federal employees are

barred under *Bivens*). Although a *Bivens* claim requires personal involvement, *Meyer*, 510 U.S. at 485, Gorfinkel has failed to allege personal involvement by each named defendant to sufficiently support a claim under *Bivens*. *See* Am. Compl. He has failed to suggest that any of the individual defendants had a direct role in the alleged failure to immediately provide him with proof of his lawful permanent resident status. *See id*.

Moreover, Gorfinkel has failed to show that his claim for damages based on the brief period he was unable to obtain a stamp on his passport falls into one of the categories of *Bivens* claims recognized by the Supreme Court. The Supreme Court has only expanded the *Bivens* remedy beyond the deprivation of Fourth Amendment rights on two occasions. *See Del Carmen Guevara v. United States*, 2020 WL 7344133, at *5 (N.D. Tex. Dec. 14, 2020) (citing *Davis v. Passman*, 442 U.S. 228 (1979) (violations of the Fifth Amendment Due Process Clause for gender discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (violations of the Eighth Amendment by prison officials for failure to provide medical care to a prisoner)). Gorfinkel's claim would represent an expansion of the *Bivens* remedy, and such expansion has been strongly discouraged. *See Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1857 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). The Court therefore declines to recommend expansion of the *Bivens* remedy to cover Gorfinkel's allegations. Accordingly, Gorfinkel has failed to state a claim, and his claim under *Bivens* should be dismissed.

## Recommendation

For the foregoing reasons, Gorfinkel's motion to amend is DENIED, and the Court should GRANT Defendants' Motion to Dismiss.

**SO RECOMMENDED.**

Signed February 12, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).